UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANGELA GROSTEFON Individually and as Personal Representative of the Estate of Robert Grostefon, Deceased,<br><br>          Plaintiff,<br><br>    v.<br><br>CINTAS CORPORATION NO. 2<br>   d/b/a CINTAS FIRE PROTECTION,<br><br>          Defendant. | No. 2:19-cv-00141-JPH-MJD |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Robert Grostefon was badly burned by a fire in the truck he was driving at his job and died several days later. His wife, Angela Grostefon, contends that Cintas Corporation ("Cintas") is liable for her husband's death because it negligently failed to maintain a proper fire suppression system on the truck. Cintas has moved for summary judgment and Ms. Grostefon has filed a cross-motion for partial summary judgment. Dkt. [80]. For the following reasons, Cintas' motion is **DENIED** and Ms. Grostefon's motion is **GRANTED**.

## I.
## Facts and Background

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832

1

F.3d 645, 648 (7th Cir. 2016).  For each motion, the Court views the evidence and draws all reasonable inferences "in favor of the non-moving party."  *Id.*

Peabody Energy, Inc. operates a surface coal mine in Sullivan County, Indiana.  Dkt. 75 at 5.  In March 2010, Peabody contracted with Cintas to install a fire suppression system in a Caterpillar haul truck ("Truck 170").  *See* dkt. 81-12.  Cintas inspected Truck 170 and found that it already had a fire suppression system, but it needed to be repaired.  Dkt. 81-10 at 12 (Davis Dep. 27:5–9).  Cintas then repaired the old system.  *Id.* (27:13–15).

Truck 170's fire suppression system requires manual activation.  Dkt. 76-2 at 3 (Wheeler Dep. 24:12-24).  To activate it, the truck's operator must remove a pin and push a red button.  Dkt. 76-3 at 4.  The system then causes a gas cartridge to rupture, releasing gas into a dry chemical tank.  *Id.*  When the gas reaches the tank, the chemicals inside activate and flow to pre-determined "fire hazard areas," the areas most likely to be involved in a fire.  *Id.* at 3–4.  In effect, the fire suppression system works like a standard fire extinguisher.  Dkt. 75 at 6.

The fire suppression system manual provides instructions and safety standards for installing, recharging, inspecting, and maintaining the type of fire suppression system used on Truck 170.  Dkt. 76-3.  The manual designates a variety of "hazard areas," such as the truck's engine compartment.  *Id.* at 7; dkt. 76-10 at 5 (Davis Dep. 14:17–23).  The manual states that fire suppression systems should "not route actuation hose[s] through fire hazard areas.  If this cannot be avoided, the hose[s] must be fire jacketed."  *Id.* at 8.

Along with refurbishing Truck 170's actuation hoses, Cintas agreed to inspect the fire suppression system every six months. Dkt. 80 at 3; dkt. 75 at 11. Cintas inspected Truck 170's fire suppression system nine times between March 2010 and July 2018 and never reported any deficiencies. Dkt. 81-15.

In September 2018, Truck 170 caught fire while Mr. Grostefon was operating it. Dkt. 81-7 at 50. The fire suppression system did not discharge. Dkt. 76-4 at 18. The fire spread through Truck 170, severely burning Mr. Grostefon. Dkt. 75 at 11. After about three days in the hospital, Mr. Grostefon died of cardiac arrest and organ failure. Dkt. 81-5 at 4 (Ms. Grostefon Dep. 77:21–24); dkt. 76-10.

The United States Department of Labor Mine Safety and Health Administration ("MSHA") investigated the incident and cited Cintas for a violation of the safety requirement that "[m]obile and stationary machinery and equipment shall be maintained in safe operating condition and machinery or equipment in unsafe condition shall be removed from service immediately." 30 CFR § 77.404(a); dkt. 81-14 at 1; dkt. 81-10 at 15. Specifically, MSHA found that the "fire suppression system . . . did not properly operate when activated by the miner," and that Cintas did not comply with the fire suppression system manual when it: (1) routed the fire suppression actuation hoses through the truck's engine compartment, a fire hazard area, and (2) failed to sleeve the hoses with heat-resistant fire jackets. Dkt. 81-14 at 1.

The MSHA report of the incident found, among other things, that:

3

- "[T]he actuator station in the cab had been used.  The safety pin had been pulled."
- "The fire suppression system actuation hoses were routed through the engine compartment . . . and were not sleeved with an extreme heat-resistant fire jacket."

Dkt. 81-7 at 55–56.

Ms. Grostefon filed this action[1] alleging that Cintas negligently installed, inspected, and/or maintained the fire suppression system.  Dkt. 1.  Cintas has moved for summary judgment on all claims.  Dkt. 74.  Ms. Grostefon has filed a cross-motion for partial summary judgment on whether Cintas owed a duty of care.  Dkt. 80.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

---

[1] Ms. Grostefon is suing Cintas both individually and as Personal Representative of the Estate of Robert Grostefon.  Dkt. 1.  References to Ms. Grostefon throughout the Order include both capacities.

4

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

### III.
### Analysis

"To succeed on a negligence claim under Indiana law, the plaintiff must prove the standard elements: that the defendant had a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014) (citing *Yost v. Wabash College,* 3 N.E.3d 509, 515 (Ind. 2014)).

Cintas argues that it's entitled to summary judgment because (1) it did not owe Mr. Grostefon a duty and, even if it did, (2) there is no evidence from which a jury could find that Cintas breached any duty or that such breach was the proximate cause of Mr. Grostefon's death. Dkt. 75 at 19, 23. Ms. Grostefon contends that Cintas owed Mr. Grostefon a duty to properly perform the hose installation, inspection, and maintenance on the fire suppression system on Truck 170, that Cintas breached that duty, and that Cintas' breach caused Mr. Grostefon's death. Dkt. 80 at 19. The Court must apply Indiana law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber*, 923 F.3d at 482.

### A. Duty of care

Both Cintas and Ms. Grostefon have moved for summary judgment on the issue of duty. Dkt. 75; dkt. 80. This section addresses Ms. Grostefon's motion. *See American Family Mut. Ins.*, 832 F.3d at 648.

Under Indiana law, a party's contractual agreement to provide services can place it in a position "that the law will impose upon him a duty to perform his undertaking in a manner which will not jeopardize the safety of others, including third persons." *Mission Land Co. v. BFS Diversified Products LLC*, 126 F. App'x. 741, 743 (7th Cir. 2005) (quoting *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1262 (Ind. Ct. App. 1989)). Indiana has adopted the Restatement (Second) of Torts § 324A, which provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a) His failure to exercise reasonable care increases the risk of such harm, or
> (b) He has undertaken to perform a duty owed to the third person, or
> (c) The harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (Am. Law. Inst. 1975); *see also Greathouse v. Armstrong*, 616 N.E.2d 364 (Ind. 1993) (describing § 324A's elements).

Ms. Grostefon must therefore show that Cintas engaged in an undertaking to render services, and that (1) the risk of harm to Mr. Grostefon increased due to Cintas' failure to exercise reasonable care; (2) Cintas

6

undertook to perform a duty owed by Peabody to Mr. Grostefon; or (3) the harm suffered by Mr. Grostefon was a consequence of his reliance on services rendered by Cintas. *See Mission Land*, 126 Fed. App'x. at 743.

It is undisputed that Peabody retained Cintas to equip Truck 170 with a fire suppression system and conduct periodic inspections, dkt. 80 at 2; dkt. 75 at 10, and that Cintas "perform[ed] the partial reassembly necessary to restore the haul truck's fire suppression system to operation," dkt. 75 at 10, dkt. 76-1 at 10–11 (DeCamps Dep. 244:13–25, 245:1–18). It is also undisputed that Cintas was paid for each inspection of Truck 170. Dkt. 81-1 (Swearingen Dep. Exhibit I). Thus, Ms. Grostefon has demonstrated that Cintas engaged in an undertaking to render services. *See Tyrus v. Indianapolis Power & Light Co*, 134 N.E.3d 389 (Ct. App. Ind. 2019) (finding defendant undertook a duty for consideration).

Ms. Grostefon argues that Cintas undertook a duty that was owed to Mr. Grostefon, while Cintas contends that this was Peabody's duty. Dkt. 84 at 4. The designated evidence shows that Cintas agreed to inspect Truck 170 semi-annually. Dkt. 75 at 11; dkt. 80 at 3. Having been hired to ensure the safety and quality of Truck 170's fire suppression system, Cintas "assume[d] the responsibility of performing the owner's duty to others." Restatement (Second) of Torts § 324A cmt. D; *see also Tyrus*, 134 N.E.3d at 404 (undertaking a contractual duty resulted in defendant owing the beneficiaries of the contract a duty of care).

7

Cintas argues that summary judgment on the issue of duty is not appropriate because there are questions of fact regarding the scope of the undertaking and that those questions must be determined by a jury. Dkt. 84 at 4–5. But "as a matter of federal procedure . . . , whether a duty exists is a question of law for the court." *Jeffords v. BP Prods. N. America, Inc.*, 963 F.3d 658, 661 (7th Cir. 2020) (*citing Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537 (1958)). The uncontested facts regarding Cintas' agreement with Peabody to repair Truck 170's fire suppression system and periodically inspect it show that Cintas owed a duty to Mr. Grostefon.

Ms. Grostefon is entitled to summary judgment on the issue of duty, so her motion for partial summary judgment on that issue is **GRANTED**.

### B. Proximate cause

Cintas argues that even if there was a duty, it is nonetheless entitled to summary judgment because (1) the fire suppression system was never activated; (2) the fire did not start in an area protected by the system; and (3) the actuation hose damaged in the fire did not require fire jacketing. Dkt. 75 at 23–24. Ms. Grostefon responds that the findings in the MSHA final report and citation, dkt. 81-7 at 47; dkt. 81-14, show a genuine issue of material fact as to proximate cause, dkt. 80 at 19.

Proximate cause has two components: (1) causation in fact and (2) scope of liability. *City of Gary ex. Rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243–44 (Ind. 2003). Cintas argues that Ms. Grostefon cannot show causation in fact, which asks whether "the injury would not have occurred

8

without the defendant's negligent act or omission." *Id.* Causation in fact is ordinarily a factual question reserved for the jury, unless "reasonable minds cannot disagree," in which the issue then "may become a question of law for the court." *Kaiser v. Johnson & Johnson,* 947 F.3d 996, 1016 (7th Cir. 2020) (internal citation omitted).

### 1. Fire suppression system activation

Cintas first argues that Ms. Grostefon cannot show causation in fact because the fire suppression system was not activated during the fire. Dkt. 75 at 25, dkt. 83 at 10. In response, Ms. Grostefon argues that a jury could find that Mr. Grostefon did activate the fire suppression system. She has designated the MSHA report, dkt. 81-7 at 47, and citations against Cintas and Peabody, dkt. 81-14, as supporting evidence.

The MSHA report and citations are evidence from which a reasonable jury could find that Mr. Grostefon activated the fire suppression system. The MSHA report states that "[t]he truck had two manual actuator stations," one of which was in the cab. Dkt. 81-7 at 54. In order "to actuate the system, the truck operator would pull a pin and depress the plunger." *Id.* The MSHA report states that "[i]nvestigators found that the actuator station in the cab had been used. The safety pin had been pulled and the actuator bottle in the cab had been discharged." *Id.* at 55. Similarly, the MSHA citation states that "[t]he . . . manual fire suppression system installed on the haul truck did not properly operate *when activated by the miner operating the truck during a fire.*" Dkt. 81-7 at 62 (emphasis added).

9

Thus, there is sufficient evidence for a jury to find that the fire suppression system was activated during the fire. While a jury may reach the opposite conclusion, resolving these issues will require making credibility determinations and accepting some facts as proven while rejecting others, functions that are reserved for the jury. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.").

### 2. Fire origination area

Cintas next argues that the fire originated under the operator's cab, not in an area designed to be protected by the fire suppression system. Dkt. 75 at 31; dkt. 76-4 at 111. Ms. Grostefon contends that the fire originated in the engine compartment. Dkt. 80 at 17.

Ms. Grostefon has designated evidence that the fire was caused by a ruptured steering hose underneath the operator's cab which allowed "high pressure hydraulic fluid to spray onto the hot surfaces *of the engine*, resulting in a fast-growing fire." Dkt. 81-7 at 50 (emphasis added). She contends that this evidence shows that while the event that caused the fire—the rupturing of the hydraulic fluid hose—occurred under the operator's cab, the fire originated in the engine area when hydraulic fluid sprayed onto the engine and caught on fire. Moreover, Ms. Grostefon has designated evidence from Richard Shaw, who opines that the hoses identified in the MSHA report "could also be damaged by a fire in the engine compartment, as they were here." Dkt. 81-8 at

10

6. While Cintas has designated contrary evidence, *e.g.,* dkt. 76-4 at 108-109, a reasonable jury could find that the fire originated in the engine compartment, an area designed to be protected by the fire suppression system. While a jury could instead find that the fire originated underneath the operator's cab, an area not protected by the system, that determination requires making findings of fact and credibility determinations.

### 3. Location of the fire suppression system actuation hose that was damaged in the fire

Cintas last argues that the damaged actuation hose was not in a "hazard area" that required it to be fire jacketed. Dkt. 75 at 33; dkt. 76-4 at 111. Ms. Grostefon responds that the damaged actuation hose ran through the engine compartment and was therefore required to be fire jacketed. Dkt. 80 at 9; dkt. 81-7 at 55. Specifically, the designated evidence shows that MSHA found that the "actuation hoses were routed through the engine compartment," dkt. 81-7 at 55, which "is a typical vehicle fire hazard area" that required the hoses to be fire jacketed, dkt. 81-14 at 4.

Ms. Grostefon has designated evidence showing that there is a triable issue of fact as to whether Mr. Grostefon activated the fire suppression system, whether the fire originated in a "hazard area," and whether the damaged fire suppression actuation hose was required to be fire jacketed. As such, a reasonable jury could find that Mr. Grostefon's injury may not have occurred "without [Cintas'] negligent act or omission." *City of Gary ex Rel. King v. Smith,* 801 N.E.2d at 1243–44. Weighing this evidence is a task reserved for a jury. Although a jury may accept Cintas's evidence over Ms. Grostefon's, the

existence of a triable issue of fact prevents the Court from granting Cintas' motion for summary judgment on the issue of proximate cause.

### 4. Admissibility of the MSHA report

Finally, Cintas argues that Ms. Grostefon cannot rely on the MSHA draft report because (1) it contains "only preliminary opinions" and not "factual findings"; (2) it contains "hearsay opinions" which preclude admissibility under Rule 803; and (3) Ms. Grostefon made an "improper attempt to belatedly disclose additional expert opinions" because her Liability Expert Disclosures only listed one expert, Richard Shaw, and not the names of any MSHA investigators. Dkt. 83 at 16–17. Ms. Grostefon responds that the MSHA citations, draft report, and final report, dkt. 81-14 at 4; dkt. 81-7 at 19–68, are admissible under Federal Rule of Evidence 803(8), dkt. 80 at 17.

Under Federal Rule of Evidence 803(8), a "record or statement of a public office" is admissible if "it sets out . . . factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). Here, the MSHA report was created by a federal agency under the United States Department of Labor. Dkt. 81-7 at 47–68. And the MSHA report was the result of a legally authorized investigation for violations of federal standards for the type of machine used in the accident. *See* 30 C.F.R. § 77.404 (a); *see also* 30 U.S.C. § 813(d) (statutory authority granting investigative power to MSHA). The MSHA report is therefore admissible under Federal Rule of Evidence 803(8)(A)(iii).[2]

---

[2] The Court relied only upon the final MSHA report, dkt. 81-7 at 47–68, and therefore does not address the admissibility of the draft MSHA report.

12

Cintas contends that certain portions of the report designated by Ms. Grostefon are nonetheless inadmissible because they state conclusions and/or opinions. But "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).

Here, the conclusions and opinions in the report that are cited by Ms. Grostefon are based on MSHA's factual investigation. Dkt. 81-7 at 6 (Wheeler Dep. 17:7–10) (noting that the haul truck was examined by MSHA on September 26, 2018); *id.* at 15 (40:18–21) (referencing MSHA exam photos and videos); dkt. 76-2 at 3 (Davis Dep. 24:3–10) (referring to witness interview notes prepared by MSHA investigators); dkt. 81-7 at 47 (listing MSHA investigators and inspectors); *id.* at 53. And an evaluative report containing both opinions and conclusions can constitute a "factual finding." *See Daniel v. Cook County*, 833 F.3d 728, 740 (7th Cir. 2016); *cf. Jordan v. Binns*, 712 F.3d 1123, 1133–34 (7th Cir. 2013) ("[A] transcript of a third party's statement generally does not constitute a "factual finding."). Moreover, Cintas has not shown that those conclusions and opinions are not trustworthy. While Cintas has presented arguments challenging the opinions and conclusions set forth in the MSHA report, dkt. 83 at 5, 13–14, those arguments go to the weight that a finder of fact should give them and are not adequate basis to exclude them altogether.

*Beech Aircraft Corp.*, 488 U.S. at 168 ("[T]he admission of a report containing 'conclusions' is subject to the ultimate safeguard—the opponent's right to present evidence tending to contradict or diminish the weight of those conclusions.").

Therefore, the final MSHA report is within the scope of the public record exception under Rule 803(8)(A)(iii) and is admissible.

Cintas' final argument, that Ms. Grostefon cannot designate the MSHA report after serving her Liability Expert Disclosures, dkt. 83 at 17, is unpersuasive. Federal Rule of Civil Procedure 26(a)(2)(A) requires that a party disclose "the identity of any witness it may use at trial" and that this disclosure "be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(A). Cintas does not dispute that Ms. Grostefon's expert witness, Richard Shaw, was timely and properly disclosed as an expert witness. *See* dkt. 53; *see also* dkt. 83 at 17. Rather, Cintas challenges the materials that Mr. Shaw cites to or relies on in his report. However, under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of." Fed. R. Evid. 703. Thus, Rule 26 does not preclude Mr. Shaw from relying on the MSHA report. Cintas' arguments go to the weight that a jury should give to Mr. Shaw's opinion.

## IV.
## Conclusion

Because Cintas owed a duty to Mr. Grostefon, Ms. Grostefon's motion for partial summary judgment is **GRANTED**. Dkt. [80]. Further, because there

are genuine issues of material facts as to proximate cause, Cintas's motion for summary judgment, dkt. [74], is **DENIED**.

**SO ORDERED.**

Date: 8/19/2021

                                         James Patrick Hanlon
                                         United States District Judge
                                         Southern District of Indiana

Distribution:


Jared Adam Hurts
GOLITKO & DALY, P.C.
jared@golitkodaly.com

John P. Daly, Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com

Haley Johnston
FROST BROWN TODD LLC (Indianapolis)
hjohnston@fbtlaw.com

Nicholas C. Pappas
FROST BROWN TODD LLC (Indianapolis)
npappas@fbtlaw.com