UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANGELA GROSTEFON Individually and as Personal Representative of the Estate of Robert Grostefon, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:19-cv-00141-JPH-MJD |
| CINTAS CORPORATION NO. 2 d/b/a CINTAS FIRE PROTECTION, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Plaintiff designated Dr. Ronald Missun, Ph.D., as a damages expert to offer testimony regarding the estimated range of financial loss caused by Mr. Grostefon's death.  Dkt. 82.  Defendant, Cintas Corporation, has filed a motion to exclude Dr. Missun's expert testimony.  Dkt [91].  For the reasons that follow, that motion is **DENIED**.  *Id.*

**I.**
**Facts and Background**

Ms. Grostefon alleges that Cintas Corporation ("Cintas") is liable for her husband's death because it negligently failed to maintain a proper fire suppression system on a truck that Mr. Grostefon was operating at the time it caught fire.  Dkt. 1 at 4.  In support of her claim for damages related to lost future earnings and loss of household services, Ms. Grostefon designated an economist, Dr. Ronald Missun, as an expert.  Dkt. 82.

Dr. Missun prepared two reports on the estimated ranges of loss of household services and earning capacity that Ms. Grostefon could expect to experience as a result of her husband's death.  Dkts. 82-1; 82-2.  In each, he outlined the inputs he considered as well as the methodology he used to analyze them: information provided to him by Plaintiff's counsel, a phone interview with Ms. Grostefon, and various statistical models.  *Id.*  He estimated a range of $155,750–$372,610 in damages for the loss of Mr. Grostefon's future earnings and $177,520–$202,051 for the loss of his household services.  Dkt. 92 at 2.

Dr. Missun based the low end of the ranges on the "average" remaining years of work and life expectancy for someone of Mr. Grostefon's age, gender, and education level, and the high end on Ms. Grostefon's statements that her husband planned to work until age 72 and that he was in fair physical shape. Dkt. 92-2 at 7-8, 12 (Missun Dep. at p. 76-77, 100).

When asked in his deposition, Dr. Missun gave reasonable responses explaining why he chose certain variables and not others, stating (1) that it is beyond the scope of an economist to independently consider the impact of an individual's medical condition, dkt. 92-2 at 8-9 (Missun Dep. at p. 77-78), and (2) that it "is common to" consider information provided by a spouse after an injury, *id.,* at 6 (Missun Dep. at p. 75).  He also asserted that both ranges were calculated using the "standard" employed by his firm in the field of economics. Dkts.  82-1 at 1; 82-2 at 1.

Cintas filed a motion to exclude this damages-related testimony.  Dkt. 91.

## II.
## Applicable Law

Federal Rule of Evidence 702 "confides to the district court a gatekeeping responsibility" to ensure that expert testimony is both relevant and reliable. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)).  "In performing this role, the district court must engage in a three-step analysis, evaluating: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony."  *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

For the first step, a witness must be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016).  General qualifications are not enough; a foundation for answering specific questions is required.  *Hall*, 840 F.3d at 926. A witness qualified with respect to the specific question being asked may give opinion testimony if:

> a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) The testimony is based on sufficient facts or data;
> c) The testimony is the product of reliable principles and methods; and
> d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Hall*, 840 F.3d at 926.

For the second step, the Court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 592–93). Relevant factors may include "whether the expert's theory has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Id.* "[T]his list is neither exhaustive nor mandatory." *Gopalratnam*, 877 F.3d at 780. Instead, the test is "flexible" because "the gatekeeping inquiry must be tied to the facts of a particular case" and "the precise sort of testimony at issue." *Id.*

If step two is satisfied, the Court must then assess whether "the expert testimony will assist the trier of fact." *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019). For this step, the Court "evaluates whether the proposed scientific testimony fits the issue to which the expert is testifying." *Id.*

### III.
### Analysis

Cintas's arguments focus on the second and third steps of the analysis. It contends that Dr. Missun should not be permitted to offer his opinions on damages because he (1) "did not review Mr. Grostefon's medical records or the report of cardiologist, Dr. Parr, regarding Mr. Grostefon's reduced life expectancy" and (2) improperly considered Ms. Grostefon's statements about her husband's physical fitness and his intentions to continue working. Dkt. 92 at 5, 9. On that basis, Dr. Missun's opinions do not "fit" the case and are

unreliable, unhelpful, and inadmissible because they are based on "statistics and speculation." *Id.* at 6, 10. Ms. Grostefon responds that "[Dr. Missun's] methods are based on widely accepted statistical models and any critiques of his methodology are appropriate for cross examination and not a blanket exclusion." Dkt. 100 at 3.

"Trained experts commonly extrapolate from existing data." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). To pass the threshold of admissibility, the opinion "must be reasoned and . . . utilize the methods of the relevant discipline." *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). When the opinion relates to statistical modeling, "the Supreme Court and this Circuit have confirmed on a number of occasions that *the selection of the variables* to include in a regression analysis is normally a question that goes to the probative weight of the analysis rather than to its admissibility." *Manpower*, 732 F.3d at 808. The "focus" of any *Daubert* inquiry is, "on principles and methodology, not on the conclusions that they generate." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (quoting *Daubert*, 509 U.S. at 595.) Accordingly, determining whether the opinion is convincing, "given the circumstances of a particular case . . . is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith*, 215 F.3d at 719 (citing *Walker v. Soo Line R. Co.*, 208 F.3d 581, 589–90 (7th Cir. 2000).

In *Manpower*, the Seventh Circuit reversed the district court's exclusion of a damages expert who based calculations on only a portion of the data available and on statements from the plaintiff-company's executives.  732 F.3d at 810.  The Court reasoned that "the selection of data inputs . . . [is] separate from the reliability of the methodology."  *Id.* at 807.  And, under *Daubert*, "the reliability of the data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury."  *Id.* at 808.  The district court's inquiry into the underlying facts and data was "set[ting] the bar too high."  *Id.* at 810.

Here, Cintas makes an almost identical argument to the one put forth in *Manpower*.  It argues that Dr. Missun's opinions do not fit this case—not because of failures in the actual methodology used, but because of the specific data chosen—that is, the lack of Mr. Grostefon's individual medical or health information and the inclusion of Ms. Grostefon's statements.

The fact that Dr. Missun drew conclusions based on the evidence provided to him by the party that employed him does not mean that his *methods* are insufficient.  *Manpower*, 732 F.3d at 809 (finding "nothing remarkable about a paid expert preparing a report with the assistance of [plaintiff]"); *see also Tuf Racing Products v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (finding that the testimony of a damages expert was admissible, even though based on information provided to him by the party he was employed by, because his calculations were "well within the competence of a C.P.A.").

6

Even if Dr. Missun's damages calculation would have been different had he considered Mr. Grostefon's medical history, that does not make his opinions inadmissible.  *See Walker*, 208 F.3d at 589 (concluding that cross-exam, rather than exclusion, is the proper tool to highlight that an expert's opinion could have been different, had [he] evaluated additional or different information).

Ultimately, "an expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt."  *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 766 (7th Cir. 2013).  Dr. Missun has "placed his assumptions in the record for scrutiny according to the adversarial process."  *Manpower*, 732 F.3d at 809.  Cintas may cross-examine Dr. Missun at trial on the methods he used and the conclusions he reached.

## IV.
## Conclusion

Therefore, Cintas's motion to exclude opinions of Plaintiff's damages expert, Dr. Ronald Missun, is **DENIED**. Dkt. [91]. The Court **requests** that Magistrate Judge Dinsmore hold a status conference to discuss case status, trial readiness, and the possibility of settlement.

**SO ORDERED.**

Date: 9/29/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

7

Distribution:

John P. Daly, Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com

Jared Adam Harts
GOLITKO & DALY, P.C.
jared@golitkodaly.com

Haley Johnston
FROST BROWN TODD LLC (Indianapolis)
hjohnston@fbtlaw.com

Nicholas C. Pappas
FROST BROWN TODD LLC (Indianapolis)
npappas@fbtlaw.com

Magistrate Judge Mark J. Dinsmore